1

2

3

4

5

6

7          IN THE UNITED STATES DISTRICT COURT

8          FOR THE EASTERN DISTRICT OF CALIFORNIA

9  DANIEL UNGUREANU, et al.,

10          Plaintiffs,                    No. CIV S-11-0316 LKK GGH PS

11     vs.

12  A. TEICHERT & SON, et al.,             ORDER AND

13          Defendants.                    FINDINGS AND RECOMMENDATIONS

14  _____/

15          Presently pending before the court are motions to dismiss filed by defendants

16  Thomas Anthony, Jr.; York Insurance Services Group, Inc.-California ("York"); A. Teichert &

17  Son, Inc. ("Teichert"); Goldman, Magdalin & Krikes LLP; Frazier ("Goldman Defendants");

18  Smolich & Smolich, and Robert Smolich ("Smolich Defendants"); and Mark Shelub, M.D., as

19  well as motions to strike filed by defendants York; Teichert; Goldman Defendants; and Shelub,

20  previously submitted without oral argument.  In conjunction with these motions, plaintiffs have

21  filed a request for judicial notice, as have the Smolich defendants.  Having reviewed the papers

22  on support of and in opposition to the motions, the court now issues the following findings and

23  recommendations.

24  BACKGROUND

25          Plaintiffs Daniel and Elizabeth Ungureanu are proceeding pro se and have paid

26  the filing fee.  This action is proceeding on the first amended complaint ("FAC"), filed February

1

10, 2011.  Daniel Ungureanu claims that his employer, Teichert, discriminated against him and subjected him to adverse treatment because of his nationality as a Romanian immigrant, and then terminated him.  He also claims he was subject to retaliation for his complaints of workplace violations.  He claims he was working as a certified heavy equipment operator in May, 2004, when a co-worker intentionally bumped into him while he was operating a scraper, causing neck and back injuries.  Although plaintiff reported the incident to his foreman, the foreman did not file an incident report, and the co-worker was not trained or disciplined. (FAC ¶ 16.)  The FAC alleges multiple incidents of similar improper behavior by co-workers which caused plaintiff injury, but for which Teichert allegedly took no action.  (Id. at ¶¶ 17, 18, 19, 20.)  Eventually, plaintiff was so injured from being rammed on three separate occasions that his last day of work was July 11, 2005.  (Id. at ¶ 20.)   Plaintiff received many years of medical treatment through the Worker's Compensation system as a result, and alleges that the QME reports of defendant Dr. Shelub either were improperly influenced by Teichert's adjuster, Bragg & Associates,[1] and its defense attorney, Goldman and Mr. Frazier, or were changed based on the improper interference of these defendants.  As a result, plaintiff's disability rating decreased from 50 percent to 28 percent, which is what plaintiff's workers' compensation attorney, defendant Smolich, indicated it would be.[2]  (Id. at ¶ 22.)

DISCUSSION

I.  Requests for Judicial Notice

Both plaintiffs and the Smolich defendants have filed requests for judicial notice. (Dkt. nos. 22, 39.)  Defendants have opposed plaintiffs' request for judicial notice.  (Dkt. no. 47.) The Smolich defendants request judicial notice of their Exhibits A, B, and C, which are a

---

[1]  Bragg & Associates is now known as defendant York Insurance Services Group, Inc.-California, its successor in interest.  York is the third party administrator of defendant Teichert's workers' compensation self-insured program.

[2]  Defendant Smolich and his law firm represented plaintiff before the WCAB until relieved in July, 2008.

1   Substitution of Attorneys in plaintiff's matter before the WCAB, dated August 10, 2005, a

2   Petition to be Relieved as Attorney of Record for plaintiff in his matter before the WCAB, dated

3   June 20, 2008, and an order relieving these defendants as counsel of record for plaintiff in that

4   matter, dated July 14, 2008.  Plaintiffs request judicial notice of 57 documents totaling over 200

5   pages from their matter before the WCAB.

6              A court may take judicial notice of court records.  See MGIC Indem. Co. v.

7   Weisman, 803 F.2d 500, 505 (9th Cir. 1986); United States v. Wilson, 631 F.2d 118, 119 (9th

8   Cir. 1980).  However, not all court records are equal with respect to the ability to take judicial

9   notice.  The *sine qua non* for any judicial notice request is that the information sought to be

10  noticed is of a character that is generally known, or cannot reasonably be disputed.  Fed. R. Ev.

11  210(b).  Thus, for example, the facts contained in a declaration opposing a summary judgment

12  found in another case file could not normally be judicially noticed because those facts, with

13  infrequent exception, would not be generally known, nor would they be facts which could not be

14  reasonably disputed.  However, the fact that a declarant uttered such facts (whether true or not)

15  in a declaration which was filed could not be reasonably disputed assuming that proper

16  authentication was performed.  Judicial notice could be taken of the declaration in this latter

17  example.

18              Because the Smolich defendants' exhibits (substitution/withdrawal of counsel) are

19  clearly administrative court records whose accuracy cannot be reasonably doubted, i.e., their

20  relevance is that they were filed, and are authenticated by the sworn declaration of Robert Lucas,

21  their request for judicial notice is granted.  However, it is not readily apparent that plaintiff's

22  documents are all court records as they are submitted without foundation, and especially that the

23  facts contained therein are not reasonably subject to dispute.  It is unclear what relevance

24  plaintiffs seek to attach to the documents.  Plaintiffs have not submitted a declaration attesting

25  that the documents are what they purport to be.  Furthermore, not all of the documents are court

26  records and it is impossible to determine if they were in fact submitted in connection with the

3

1  Workers' Compensation proceeding.  See e.g. Ex. 1 (Report of Dr. Shelub, dated March 18,

2  2007).  In any event, none of the documents for which plaintiffs request judicial notice are

3  necessary to determine the motions.  Therefore, plaintiffs' request for judicial notice is denied.

4  II.  Legal Standards

5       A.  Rule 12(b)(6) - Failure to State a Claim

6            In order to survive dismissal for failure to state a claim pursuant to Rule 12(b)(6),

7  a complaint must contain more than a "formulaic recitation of the elements of a cause of action;"

8  it must contain factual allegations sufficient to "raise a right to relief above the speculative

9  level."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1965 (2007).  "The

10  pleading must contain something more...than...a statement of facts that merely creates a suspicion

11  [of] a legally cognizable right of action."  Id., quoting 5 C. Wright & A. Miller, Federal Practice

12  and Procedure § 1216, pp. 235-236 (3d ed. 2004).  "[A] complaint must contain sufficient factual

13  matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal,

14  ___ U.S. ___, 129 S.Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570, 127 S.Ct. 1955).

15  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

16  draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.

17            In considering a motion to dismiss, the court must accept as true the allegations of

18  the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740, 96 S.

19  Ct. 1848, 1850 (1976), construe the pleading in the light most favorable to the party opposing the

20  motion and resolve all doubts in the pleader's favor.  Jenkins v. McKeithen, 395 U.S. 411, 421,

21  89 S. Ct. 1843, 1849, reh'g denied, 396 U.S. 869, 90 S. Ct. 35 (1969).  The court will "'presume

22  that general allegations embrace those specific facts that are necessary to support the claim.'"

23  National Organization for Women, Inc. v. Scheidler, 510 U.S. 249, 256, 114 S.Ct. 798, 803

24  (1994), quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 561, 112 S. Ct. 2130, 2137 (1992).

25  Moreover, pro se pleadings are held to a less stringent standard than those drafted by lawyers.

26  Haines v. Kerner, 404 U.S. 519, 520, 92 S. Ct. 594, 596 (1972).

The court may consider facts established by exhibits attached to the complaint. Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987). The court may also consider facts which may be judicially noticed, Mullis v. United States Bankruptcy Ct., 828 F.2d 1385, 1388 (9th Cir. 1987); and matters of public record, including pleadings, orders, and other papers filed with the court, Mack v. South Bay Beer Distributors, 798 F.2d 1279, 1282 (9th Cir. 1986). The court need not accept legal conclusions "cast in the form of factual allegations." Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).

A pro se litigant is entitled to notice of the deficiencies in the complaint and an opportunity to amend, unless the complaint's deficiencies could not be cured by amendment. See Noll v. Carlson, 809 F. 2d 1446, 1448 (9th Cir. 1987).

B. Rule 12(b)(1) - Subject Matter Jurisdiction

On a Rule12(b)(1) motion to dismiss for lack of subject matter jurisdiction, plaintiff bears the burden of proof that jurisdiction exists. See, e.g., Sopcak v. Northern Mountain Helicopter Serv., 52 F.3d 817, 818 (9th Cir.1995); Thornhill Pub. Co. v. General Tel. & Electronics Corp., 594 F.2d 730, 733 (9th Cir. 1979). Different standards apply to a 12(b)(1) motion, depending on the manner in which it is made. See, e.g., Crisp v. U.S., 966 F. Supp. 970, 971-72 (E.D. Cal. 1997).

First, if the motion attacks the complaint on its face, often referred to as a "facial attack," the court considers the complaint's allegations to be true, and plaintiff enjoys "safeguards akin to those applied when a Rule 12(b)(6) motion is made." Doe v. Schachter, 804 F. Supp. 53, 56 (N.D. Cal. 1992). Presuming its factual allegations to be true, the complaint must demonstrate that the court has either diversity jurisdiction or federal question jurisdiction. For diversity jurisdiction pursuant to 28 U.S.C. § 1332, plaintiff and defendants must be residents of different states. For federal question jurisdiction pursuant to 28 U.S.C. § 1331, the complaint must either (1) arise under a federal law or the United States Constitution, (2) allege a "case or controversy" within the meaning of Article III, § 2, or (3) be authorized by a jurisdiction statute.

1  <u>Baker v. Carr</u>, 369 U.S. 186, 198, 82 S. Ct. 691, 699-700, 7 L. Ed. 2d 663 (1962).

2         Second, if the motion makes a "factual attack" on subject matter jurisdiction,

3  often referred to as a "speaking motion," the court does not presume the factual allegations of the

4  complaint to be true.  <u>Thornhill</u>, 594 F.2d at 733.  In a factual attack, defendant challenges the

5  truth of the jurisdictional facts underlying the complaint.  "Faced with a factual attack on subject

6  matter jurisdiction, the trial court may proceed as it never could under Rule 12(b)(6). . . . No

7  presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material

8  facts will not preclude the trial court from evaluating for itself the merits of jurisdictional

9  claims."  <u>Id.</u> (quotations and citation omitted).  The court may hear evidence such as declarations

10  or testimony to resolve factual disputes.  <u>Id.</u>; <u>McCarthy v. United States</u>, 850 F.2d 558, 560 (9th

11  Cir. 1988).[3]

12  III.  <u>The Court's Jurisdiction</u>

13         Plaintiffs have invoked diversity, 28 U.S.C. § 1332, as the jurisdictional basis of

14  the complaint.  These Idaho plaintiffs are suing California citizens.[4]  Plaintiff pleads his damages

15  in excess of $75,000.00.  Because the suit is based in diversity, the theory of supplemental

16  jurisdiction is not operative.  However, two of plaintiff's  (Daniel U.) claims, employment

17  discrimination claims against defendantTeichert, are just as clearly based on federal question

18  jurisdiction – a jurisdiction not formally pled by plaintiffs.  Because these claims have no basis in

19  diversity jurisdiction related to state law claims, and are without doubt based on federal question

20  jurisdiction (28 U.S.C. § 1331), the undersigned will overlook the failure to set forth federal

21

22         [3]  If the jurisdictional issue is intertwined with the merits of the case, the trial court cannot
    determine the jurisdictional issue until such facts are appropriately resolved.  <u>See</u> <u>Roberts v.</u>
23  <u>Corrothers</u>, 812 F.2d 1173, 1177-78 (9th Cir.1987); <u>see</u> also <u>Trentacosta v. Frontier Pac. Aircraft</u>
    <u>Indus.</u>, 8l3 F.2d 1553, 1558 (9th Cir. 1987) (summary judgment standard applied if motion
24  determines facts where jurisdictional issue and merits are intertwined).

25         [4]  Only defendant Anthony asserts a diversity issue, but that issue is dependent upon his
    being sued in his official capacity.  There is no indication in the complaint that he is being so
26  sued, and the court interprets his status as individual capacity.

1    question jurisdiction in a separate, express paragraph.

2    IV.   The Operative Claims

3                The causes of action (claims) pled by plaintiff are by and large uninformative and

4    conclusory, especially with respect to allegations of misconduct within the workers compensation

5    claims process.  Plaintiff lists as his claims:

6    1. Negligent Hiring (defendant Teichert only) (presumably on account of actions on the part of

7    the Teichert employee who hit plaintiff's machine with a machine of his own);

8    2. Negligent Supervision (defendant Teichert only) (negligent supervision of the above

9    employee);

10   3. Negligent Retention (defendant Teichert only);

11   4. Fraud - (all defendants);

12          This claim is not comprehensible except insofar as plaintiff may be claiming fraud in

13   connection with the proceedings within the workers compensation process.  Plaintiff incorporates

14   *all* previous paragraphs, none of which have much, if anything to do with possible fraud, without

15   differentiating the different defendants, and then proclaims:

16          Defendants , each of them, have misrepresented and deceived, Plaintiff from the
       beginning of the initial incidents, through the worker's compensation process to
17     the current day, solely for the purpose of increasing profits without regard for the
       safety of their employees.
18

19   5. Unfair Business Practice (Cal. Bus. & Prof. Code § 17200) (generally asserting that all

20   previous paragraphs give rise to an unfair business practice claim) (all defendants);

21   6. Conspiracy (general conclusion without any specifics) (all defendants);

22   7. Loss of Consortium (plaintiff Elizabeth Ungureanu only against all defendants);

23   8. Employment Discrimination (Title VII) (ethnicity) (Teichert only);

24   9. 42 U.S.C. § 1981) (discrimination in performance of employment contract) (Teichert only).

25   \\\\

26   \\\\

*Analysis*

The several groups of defendants previously identified have filed several motions to dismiss.  Not all of the motions to dismiss are based on the same grounds, but there is a ground universal to all state law claims which should be first adjudicated.  Those grounds which need to be broken out will be discussed after this universally applicable ground.  Those specific grounds in the various motions not reached here need not be reached.

A.  *Workers Compensation Exclusivity Bar* (Claims (Causes of Action) First, Second, Third, Fourth, Fifth, Sixth)[5]

The general rule prohibits the bringing of court claims for injuries resulting from on the job mishaps.  The general "exception" to exclusivity permits claims which are based on actions or inactions independent and separate from claims to which workers compensation applies.

> Section 3600 of the Labor Code provides that an employer is liable for injuries to its employees arising out of and in the course of employment, and section 3601 declares that where the conditions of workers' compensation exist, the right to recover such compensation is the exclusive remedy against an employer for injury or death of an employee. [footnote omitted].

Johns-Manville Products Corp. v. Superior Court, 27 Cal. 3d 465, 467-68, 165 Cal. Rptr. 858 (1980).

The rule and exception are easy to state in the abstract, but the myriad permutations of claims make the application of the rule/exception difficult.  All of the discussion below relates to the state law claims brought in this diversity action.

The California case which best sets forth the discussion on this point is Charles J. Vacanti v. State Comp. Ins. Brd, 24 Cal. 4th 800, 102 Cal. Rptr.2d 562 (2001).  The unusual facts of that case are not analogous, but the court's encyclopedic  discussion of workers compensation exclusivity is dispositive here.  Where the challenged acts ' "are a normal part of

---

[5]  The proper terminology in federal court is 'claim," and not "cause of action."  The undersigned will use the word "claim."

8

the employment relationship'...*or the workers compensation claims process*...the cause of action is subject to [workers compensation] exclusivity." Id at 820, 102 Cal. Rptr. 2d 580 (emphasis added). Importantly,

> For this initial determination, courts consider only the acts themselves—and not the motive behind the acts. (See *Fermino, supra*, 7 Cal.4th at pp. 722–723, 30 Cal.Rptr.2d 18, 872 P.2d 559.) In the exclusivity context, motive refers to the purpose or reason behind the acts and not the intentional or negligent nature of these acts. (See *ibid*.) Thus, courts should disregard any alleged intent beyond the intent to do the acts that establish the elements of the cause of action when determining whether these acts are encompassed within the compensation bargain. Such a focus is necessary in order to preserve the compensation bargain. Indeed, permitting civil claims based on conduct that "appeared on its face to be a normal part of the employment relationship [or claims process] ... merely because the mental state ... rendered the conduct intentionally or knowingly tortious" undermines the premise behind the workers' compensation system. ( Id. at p. 713, 30 Cal.Rptr.2d 18, 872 P.2d 559.)

Id. at 820-821.

There need be no long discussion to understand that an employer's alleged negligent hiring, supervision, or retention of a co-employee whose acts on the job caused injury to plaintiff on the job (the first three claims against defendant Teichert only), as specifically alleged by plaintiff, are quintessentially barred by workers compensation exclusivity. As Vacanti holds, it does not matter that the co-employee's acts were simply negligent, or some other sinister motive applied to the co-employee's mental state when he drove his machine into plaintiff's machine. These tort claims against his employer are barred.

But Vacanti also applies to the alleged conclusions about the intent of Teichert *and all the other defendant actors* in the workers compensation process. While Vacanti listed a number of examples which would fall without the compensation process, because the alleged act was unrelated to the process, it did hold:

> In reaching this conclusion, we reject plaintiffs' attempt to shield these claims from preemption by including superfluous allegations unrelated to the elements of the cause of action. For example, plaintiffs claim defendants committed abuse of process by advising other insurers not to pay plaintiffs' claims, distributing hit lists of medical providers and conducting training sessions on how to delay or avoid payments on plaintiffs' claims. These acts do not, however, support an abuse of process claim because they do not involve the use of a procedure

"incident to litigation." ( *Barquis v. Merchants Collection Assn.* (1972) 7 Cal.3d 94, 104, fn. 4, 101 Cal.Rptr. 745, 496 P.2d 817 ( *Barquis*).) Consequently, they cannot shield plaintiffs' abuse of process claims from the reach of the exclusive remedy provisions.

Plaintiffs' characterization of defendants' acts of fraud as a "scheme" suffers from the same defect. Fraud does not require a scheme, and a scheme does not establish an element of a fraud claim. (See Civ.Code, § 1709.) Thus, the existence of a scheme cannot insulate plaintiffs' fraud claim from preemption. In any event, the mere allegation of a conspiracy is not enough where, as here, the alleged acts in furtherance of the conspiracy—i.e., the fraudulent statements—are closely connected to claims processing, a normal insurer activity. (See *Hazelwerdt v. Industrial Indem. Exchange* (1958) 157 Cal.App.2d 759, 763, 321 P.2d 831 (*Hazelwerdt* ).)

The fact that the misdeeds alleged in the abuse of process and fraud claims may constitute crimes under Insurance Code sections 1871 and 1871.4 does not alter our conclusion. Unlike "those classes of intentional ... crimes against the employee's person by means of violence and coercion, such as those crimes numerated in part 1, title 8 of the Penal Code," regulatory crimes like the ones cited by plaintiffs do not "violate the employee's reasonable expectations and transgress the limits of the compensation bargain." ( *Fermino, supra,* 7 Cal.4th at p. 723, fn. 7, 30 Cal.Rptr.2d 18, 872 P.2d 559; see also *Up–Right, Inc. v. Van Erickson* (1992) 5 Cal.App.4th 579, 582–584, 7 Cal.Rptr.2d 34 ( *Up–Right* ) [criminal violations of child labor laws do not support an exception to exclusivity].)

Finally, neither abuse of process nor fraud contains a motive element that violates a fundamental public policy. Abuse of process claims merely require malice, which "may be inferred from the wilful abuse of the process."

Id at 823-824.[6]

It is easily seen that all of plaintiffs' allegations about the misdeeds during the workers compensation proceedings fall within the exclusivity holding.  Plaintiff's fourth claim

---

[6] See also Coit Drapery Cleaners, Inc. v. Sequoia Ins. Co., 14 Cal.App.4th 1595, 1606, 18 Cal. Rptr.2d 692 (1993) (negligent supervision covered by exclusivity rule but sexual harassment is excepted); Cole v. Air Oaks Fire Protection Dist., 43 Cal.3d 148, 162-63, 233 Cal.Rptr. 308 (1987) (loss of consortium and intentional infliction of emotional distress); Santiago v. Employee Benefits Services, 168 Cal.App.3d 898, 904-05, 214 Cal.Rptr. 679 (1985) (violations of Insurance Code such as refusal to pay compensation benefits); Caplan v. Fireman's Fund Ins. Co., 175 Cal.App.3d 146, 147-48, 220 Cal.Rptr. 549 (1985) (bad faith and negligent and intentional infliction of emotional distress); Appl v. Lee Swett Livestock Co., 192 Cal.App.3d 466, 473-75 (1987) (fraud and other aggravated conduct by employer covered by Act, explaining that mere allegation of such conduct without alleging specific conduct and how it was effectuated would make a shambles of the workers' compensation system, and finding no "extreme and outrageous conduct")

1    for fraud alleges that defendants made false misrepresentations and deceived him from the

2    beginning through the workers' compensation process in order to get rid of him as cheaply as

3    possible, and "solely for the purpose of increasing profits without regard for the safety of their

4    employees." (Compl. ¶¶ 39, 40.)  In his fifth claim for "unfair unlawful business practice,"

5    plaintiff alleges that all defendants "worked in concert to deprive Plaintiff of his rights under the

6    law relating to employment injuries and violence in the workplace."  He specifically charges

7    them with changing reports, misleading him as to his true medical condition, and improperly

8    denying him medical treatment.  (Id. ¶ 43.)  The sixth claim for conspiracy alleges that all

9    defendants agreed to defraud plaintiff with the intent to induce plaintiff to rely on their

10   misrepresentations, fraud and deceit to his detriment.  The complaint states that defendants

11   "worked in concert to deprive Plaintiff of his rights under the law relating to employment injuries

12   and violence in the workplace," as referenced in the claims for fraud and unfair business practice.

13    (Id. at ¶ 49.)

14          The Vacanti court found that actions such as misusing the claims process "by

15   making frivolous objections, filing sham petitions and documents with the WCAB, issuing

16   unnecessary subpoenas, [] improperly threatening to depose plaintiffs' physicians," and making

17   false statements during the processing of plaintiffs' claims were all encompassed within the

18   compensation bargain and therefore preempted by the Act.  Id.  On the other hand, claims that

19   different insurers conspired with each other to defeat a claim that they did not insure were not

20   preempted because those claims were based on misconduct not "connected to a normal insurer

21   activity."  Id. at 828.

22          Here, defendants are accused of changing reports, misleading plaintiff as to his

23   true medical condition, and improperly denying him medical treatment that would either restore

24   him to health and/or compensate him fairly for his losses.  (Compl. ¶ 43.)  He additionally alleges

25   that defendants warned him they would drag his case out for twenty years and would do anything

26   to save the company money.  (Id. at ¶ 44.)  Such allegations are even more closely tied to the

1   compensation bargain than the acts of which defendants in <u>Vacanti</u> were accused.

2       Not only is plaintiff's fraud claim not specifically pled,[7] but it alleges misconduct

3   that falls squarely within the compensation bargain.   The only allegations under the fourth claim

4   are that defendants misrepresented and deceived plaintiff throughout the workers' compensation

5   process, and that they intended to "falsely get rid of plaintiff as cheaply as possible without

6   regard to his health and/or safety."   (Compl. ¶¶ 39, 40.)

7       Despite the lack of specificity in the fraud claim, plaintiff explicitly charges that

8   defendants' conduct pertained to processing his claims through the Workers' Compensation

9   channels.   The conduct of which defendants are accused is that either defendants changed Dr.

10  Shelub's QME reports to their benefit or that Dr. Shelub was influenced by defendants to reduce

11  plaintiff's disability rating from 50 percent to 28 percent.   (Compl. ¶ 22.)  This is not the sort of

12  conduct that falls outside the parameters of the Act.   It is not akin to false imprisonment, assault,

13  battery, rape, trespassing, or other violent and coercive conduct.   <u>See</u> <u>Vacanti</u>, 24 Cal.4th at 822

14  (citing cases).

15

16      [7] Federal Rule of Civil Procedure 9, titled "Pleading Special Matters," provides as follows with regard to claims of "Fraud or Mistake; Conditions of Mind:"

17      In alleging fraud or mistake, a party must state with particularity the
18      circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other
        conditions of a person's mind may be alleged generally.

19  Fed. R. Civ. P. 9(b).  "Rule 9(b) serves not only to give notice to defendants of the specific
20  fraudulent conduct against which they must defend, but also 'to deter the filing of complaints as a
    pretext for the discovery of unknown wrongs, to protect [defendants] from the harm that comes
21  from being subject to fraud charges, and to prohibit plaintiffs from unilaterally imposing upon
    the court, the parties and society enormous social and economic costs absent some factual
22  basis.'"  <u>Bly-Magee v. California</u>, 236 F.3d 1014, 1018 (9th Cir. 2001) (quoting <u>In re Stac Elec.</u>
    <u>Sec. Litig.</u>, 89 F.3d 1399, 1405 (9th Cir. 1996)).  Accordingly, pursuant to Rule 9(b), a plaintiff
23  at a minimum must plead evidentiary facts such as the time, place, persons, statements and
    explanations of why allegedly misleading statements are misleading.  <u>In re GlenFed, Inc. Sec.</u>
24  <u>Litig.</u>, 42 F. 3d 1541, 1547 n.7 (9th Cir. 1994); <u>see also</u> <u>Vess v. Ciba-Geigy Corp. USA</u>, 317 F.3d
    1097, 1106 (9th Cir. 2003); <u>Fecht v. Price Co.</u>, 70 F.3d 1078, 1082 (9th Cir. 1995).
25      In addition, "[u]nder California law, the 'indispensable elements of a fraud claim include
    a false representation, knowledge of its falsity, intent to defraud, justifiable reliance, and
26  damages.'"  <u>Vess</u>, 317 F.3d at 1105 (quoting <u>Moore v. Brewster</u>, 96 F.3d 1240, 1245 (9th Cir.
    1996)).

1      In the instant case, plaintiff alleges garden variety fraud, which does not implicate

2   a fundamental public policy.  As in Vacanti, where the defendants were accused of engaging in a

3   pattern or practice of delaying or denying payments in bad faith, such as by making frivolous

4   objections during the claims process, filing sham petitions and documents with the WCAB,

5   issuing unnecessary subpoenas, improperly threatening to depose plaintiff's physicians, and

6   making false statements about plaintiff's claims, the actions complained of here are closely

7   connected to the normal employer activity involved in processing claims.  "[F]raud requires only

8   an 'intent to induce' another 'to alter his position to his injury or risk' and not an intent that

9   violates a public policy rooted in a constitutional, statutory, or regulatory provision. (Civ.Code, §

10   1709.)"  Vacanti, 24 Cal.4th at 824.

11      Even though plaintiff had alleged a conspiracy related to the fraud claim in

12   Vacanti, as did plaintiff in this case, the court found that the mere allegation of a conspiracy was

13   not sufficient to take the claim outside preemption because "the alleged acts in furtherance of the

14   conspiracy – i.e., the fraudulent statements – are closely connected to claims processing, a

15   normal insurer activity."  Vacanti, 24 Cal.4th at 824.  Here, plaintiff has alleged no fundamental

16   public policy violations or extreme conduct by defendants which might take these claims outside

17   the Act's exclusivity provisions.  Defendants' conduct therefore falls within the risks

18   contemplated by the compensation bargain of the Act.

19      Plaintiff's discrimination claims, however, are excepted from the Act as it has

20   been interpreted to be contrary to public policy.  See City of Moorpark, 18 Cal.4th at 1143, 1159,

21   77 Cal.Rptr.2d 445 (1998).

22      Therefore, Claims First, Second, Third, Fourth, Fifth, and Sixth should be

23   dismissed as to all defendants as being barred by the California workers compensation

24   exclusivity rule.

25   \\\\

26   \\\\

1    *Discrimination Claims (Teichert Only) (Eighth and Ninth Claims)*

2          Plaintiff's discrimination claims are based on his Romanian immigrant status,[8]

3    and are brought under Title VII and 42 U.S.C. § 1981.

4          Before bringing a Title VII action in federal court, a plaintiff must first exhaust

5    administrative remedies by filing a timely charge with the Equal Employment Opportunity

6    Commission (EEOC).  42 U.S.C. § 2000e-5(b).  See Lyons v. England, 307 F.3d 1092, 1103-04

7    (9th Cir. 2002); Sommantino v. United States, 255 F.3d 704, 707 (9th Cir. 2001); EEOC. v.

8    Farmer Bros. Co., 31 F.3d 891, 899 (9th Cir.1994).[9]  This charge must be filed within 180 days

9    of the last discriminatory act (or within 300 days in a state, such as California, which has its own

10   anti-discrimination laws and agency, and where the aggrieved employee has instituted

11   proceedings with a state or local agency).  See 42 U.S.C. § 2000e-5(e)(1).  The district court

12   complaint must be filed within 90 days of receipt of a Right-to-Sue Letter from the EEOC.  See

13   42 U.S.C. § 2000e-16(c); 29 C.F.R. § 1614.408(c).[10]  The scope of the district court's jurisdiction

14   is limited by the allegations contained in the EEOC charge and the EEOC investigation.  See

15   Farmer Bros. Co.  31 F. 3d at 891.

16         Plaintiff has not alleged exhaustion and has failed to attach a right-to-sue letter to

17   his complaint.  In opposition plaintiff argues that he was not required to exhaust, citing Labor

18   Code § 98.6 and the Private Attorney Generals Act of 2004, Labor Code §§ 2698-2699.5, which

19   he argues contain no exhaustion requirement.  Defendant correctly points out, however, that the

---

20         [8] Plaintiff alleges both race discrimination and discrimination based on national origin.

21   (Compl. ¶¶ 67, 70.)  It appears that plaintiff has copied portions of his pleading from another
     complaint, because this cause of action refers to plaintiff as "Mr. James" and defendant as

22   "Coors."  (Id. at ¶ 66.)

23         [9] This requirement is subject to waiver, estoppel, and equitable tolling. See Zipes v.

24   Trans World Airlines, 455 U.S. 385, 398 (1982)

25         [10] In addition, a plaintiff must file an EEOC complaint within 300 days of the alleged
     violation.  See 42 U.S.C. § 2000e-5(e); 29 C.F.R. § 1601.13; Draper v.Coeur Rochester, Inc., 147

26   F.3d 1104, 1107 (9th Cir. 1998).  This requirement effectively serves as a statute of limitations
     for the filing of Title VII claims.  See Draper, 147 F.3d at 1107.

first amended complaint contains no claims under the Labor Code.  Therefore, his Title VII claim should be dismissed.  Plaintiff will be given leave to amend his timely exhaustion if he can truthfully do so.[11]

42 U.S.C. § 1981 does not carry an exhaustion requirement.  <u>Surrell v. California Water Service Co.</u>, 518 F.3d 1097, 1103 (9th Cir. 2008).  It provides that all persons within the jurisdiction of the United States shall have the same right in every State to make and enforce contracts, to sue, to be parties, to give evidence, and to enjoy the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens and shall be subject to the same punishment, penalties, and taxes.  42 U.S.C. § 1981.  Subsection (b) of this provision states that the term "make and enforce contracts" includes "the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."

Unlike § 1983 which applies only to state government officials and entities,  § 1981 applies to private, non-governmental claims of discrimination in employment, or any contractual setting for that matter.  <u>Pittman v. Oregon, Employment Dept.</u>, 509 F.3d 1065, 1067-1068 (9th Cir. 2007).  However, § 1981 is limited to claims for discrimination based on race or ethnicity only.  <u>Johnson v. Riverside Healthcare System</u>, LP, 534 F.3d 1116, 1123 (9th Cir. 2008); <u>El-Hakem v. BJY Inc.</u>, 415 F.3d 1068, 1073 (9th Cir. 2005).

> Under 42 U.S.C. § 1981, discrimination based on "ancestry or ethnic characteristics" is prohibited.  <u>St. Francis Coll. v. Al-Khazraji</u>, 481 U.S. 604, 613, 107 S.Ct. 2022, 95 L.Ed.2d 582 (1987). Although national origin discrimination is not within the ambit of § 1981, race has been defined broadly to cover immigrant ethnic groups. <u>See</u> <u>Manatt v. Bank of Am., NA</u>, 339 F.3d 792, 798 (9th Cir. 2003).

<u>Fonseca v. Sysco Food Services of Arizona, Inc.</u>, 374 F.3d 840, 850 (9th Cir. 2004).  If plaintiff can prove he was intentionally discriminated against based on his birth as a Romanian, rather

---

[11]  Even if plaintiff could show exhaustion of administrative remedies, where he alleges Title VII and § 1981 claims in the same action, he is not entitled to recover damages beyond those available under Title VII unless he shows an independent basis for recovery under § 1981. <u>Tafoya v. Adams</u>, 612 F.Supp. 1097 (D.C. Colo. 1985).

than solely based on the place or nation of his origin, he can make out a case under § 1981.  See

Saint Francis College v. Al-Khazraji, 481 U.S. 604, 613, 107 S.Ct. 2022 (1987).[12]

Initially, § 1981 was not "a general proscription of racial discrimination . . . it

expressly prohibit[ed] discrimination only in the making and enforcement of contracts."

Patterson v. McLean Credit Union, 491 U.S. 164, 176 (1989).  See also Georgia v. Rachel, 384

U.S. 780, 791 (1966) ("The legislative history of the 1866 Act clearly indicates that Congress

intended to protect a limited category of rights").  However, in 1991Congress abrogated

Patterson's restrictive interpretation.

> In 1991, however, Congress responded to Patterson by adding a new subsection to
> § 1981 that defines the term "make and enforce contracts" to include the "making,
> performance, modification, and termination of contracts, and the enjoyment of all
> benefits, privileges, terms, and conditions of the contractual relationship." See
> Civil Rights Act of 1991, Pub.L. No. 102–166 § 101, 105 Stat. 1071, 1071–72
> (1991).  It was undisputed that Jones alleged violations of the amended statute.
> Jones, 541 U.S. at 373, 124 S.Ct. 1836.

Johnson v. Lucent Technologies, __F.3d__, 2011 WL 3332368 (9th Cir. 2011)

Therefore, at least with respect to race/ethnicity, the elements of Title VII and §

1981 are indistinguishable in the employment (contract) context.  Johnson v. Riverside

Healthcare System, 534 F.3d 1116, 1122 (n.3) (9th Cir. 2010); Jurado v. Eleven-Fifty Corp., 813

F.2d 1406, 1412 99th Cir. 1987).[13]

Here, the first amended complaint alleges that:

> 69.  At all relevant times, Defendant Tiechert employed a worker's
> compensation system through which injured employees would
> receive treatment and compensation through an impartial, fair and
> unbiased process.  Pursuant to Defendant Tiechert's policies and

---

[12]  For example, refusing to employ someone because he was Romanian ancestry would
be prohibited; refusing to employ someone because he was associated with the Romanian
government, would not be discrimination.

[13]  It seems odd that Congress, having gone to such lengths to create a comprehensive,
mandatory, administrative process for Title VII would simply disregard that entire process in
1991, but that, in essence, is what it did in making Title VII and § 1981 coterminous.

practices. [Sic]

70.  As a result of Defendant Tiechert's policies and practices, Mr. Ungureanu was unjustly and discriminatorily deprived of equal employment opportunities and the benefits of the worker compensation system because of his race.

(FAC, ¶¶ 69, 70.)

Although plaintiff has alleged that he is a Romanian immigrant, (FAC ¶ 67), and that Teichert made misrepresentations and deceived him during the workers' compensation claims process, he has not alleged a discriminatory motive on the part of Teichert.  Bare conclusions of discriminatory policies and practices, and the allegations here are of the scantiest variety, are insufficient to state a cognizable claim for relief under 42 U.S.C. § 1981.  Therefore, the Eighth Claim and the Ninth Claim should be dismissed with leave to amend.

*Defendant Anthony Jr.*

Although the above resolutions encompass all defendants, one defendant should be dismissed without leave to amend for an additional reason.

Defendant Anthony, Jr., an Administrative Law Judge with the California Workers' Compensation Appeals Board, moves to dismiss for lack of diversity jurisdiction in his official capacity, judicial immunity, failure to state a claim, failure to exhaust administrative remedies, and general immunity pursuant to the California Tort Claims Act.  The only allegation in the FAC which pertains to this defendant is that he was the ALJ who presided over plaintiff's workers' compensation claim.  (FAC, ¶ 11.)

The FAC does not specify whether defendant Anthony, Jr. is sued in his official or individual capacity.  If sued in his official capacity, he correctly argues that diversity jurisdiction is lacking because as an official of the state, he acts on behalf of the state and the state cannot be a citizen of a state for purposes of diversity jurisdiction.  The fundamental requirement of federal diversity jurisdiction, which plaintiffs claim as the basis for this court's jurisdiction over their case, is that all parties to the action be "citizens of different States."  28 U.S.C. § 1332(a)(1).  A

17

1  state is not a citizen of a state for purposes of diversity jurisdiction.  <u>Moor v. County of Alameda</u>,

2  411 U.S. 693, 717 (1973).  Suits against state agencies and state officials in their official capacity

3  are treated as suits against the state and therefore such suits cannot be based on diversity.

4  <u>Morongo Band of Mission Indians v. California State Board of Equalization</u>, 858 F.2d 1376,

5  1381 & 1382 n.5 (9th Cir. 1988) ("As an agency of the State of California, the Board has no

6  'citizenship' for the purposes of section 1332").  Plaintiffs' suit alleges jurisdiction based solely

7  on diversity of citizenship, and plaintiffs have sued Judge Anthony, Jr. as a state official.

8  However, as previously indicated, the undersigned will assume that this judge has been sued in

9  his individual capacity only.  This assumption avoids any jurisdictional issues including

10  supplemental jurisdiction.

11         The Supreme Court has held that judges acting within the course and scope of

12  their judicial duties are absolutely immune from liability for damages under § 1983.  <u>Pierson v.</u>

13  <u>Ray</u>, 386 U.S. 547, 87 S. Ct. 1213 (1967).  A judge is "subject to liability only when he has acted

14  in the 'clear absence of all jurisdiction.'"  <u>Stump v. Sparkman</u>, 435 U.S. 349, 356-7, 98 S. Ct.

15  1099, 1105 (1978), <u>quoting</u> <u>Bradley v. Fisher</u>, 13 Wall. 335, 351 (1872).  The two-part test of

16  <u>Stump v. Sparkman</u> determines the broad scope of judicial immunity:

17             [T]he factors determining whether an act by a judge is a 'judicial' one relate to the
               nature of the act itself, i.e., whether it is a function normally performed by a judge
18             and to the expectation of the parties, i.e., whether they dealt with the judge in his
               judicial capacity.
19

20  <u>Id.</u> at 361.

21         Administrative law judges enjoy absolute immunity for actions taken in an

22  adjudicatory role.  <u>Butz v. Economu</u>, 438 U.S. 478, 513-514, 98 S.Ct. 2894 (1978); <u>Howard v.</u>

23  <u>Drapkin</u>, 222 Cal. App. 3d 843, 852-853, 271 Cal. Rptr. 893 (1990).  Because the federal and

24  state principles governing absolute immunity for judges are identical, the undersigned will focus

25  on the more developed federal law.

26  \\\\

Plaintiff complains of actions taken by a judge in the performance of his normal functions and in his judicial capacity.  "A judge is generally immune from a civil action for damages."  Moore v. Brewster, 96 F.3d 1240, 1243 (9th Cir. 1996).  The immunity extends as well to actions for declaratory, injunctive and other equitable relief.  Id.  Only two exceptions apply – if the judge is acting clearly without jurisdiction or if the judge is not performing a judicial act.  Id.  Judicial acts are those in which a judge is "perform[ing] the function of resolving disputes between parties, or of authoritatively adjudicating private rights."  Antoine v. Byers & Anderson, Inc., 508 U.S. 429, 435-436, 113 S. Ct. 2167, 2171 (1993) (citation and internal quotation marks omitted).  Rulings during trial, hearings, and in response to pleadings constitute judicial acts.  See Sheppard v. Maxwell, 384 U.S. 333, 358, 86 S. Ct. 1507, 1520 (1966) (a judge acts in a judicial capacity when exercising control of the judge's courtroom); Barrett v. Harrington, 130 F.3d 246, 254-59 (6th Cir.(Tenn.) 1997) (collecting cases and finding letter to prosecutors a judicial act).

Plaintiffs contend that conspiracy to commit fraud, as alleged in the FAC, is not an act performed within defendant Anthony Jr.'s judicial capacity.  Plaintiffs have made no allegations, however, of a conspiracy to commit fraud by this defendant.  Under the cause of action for conspiracy, plaintiffs allege wrongdoing by other defendants, such as changing medical reports, misleading plaintiff as to his true medical condition, improperly denying him care and treatment, and telling him they would drag his case out for twenty years.  See FAC ¶¶ 22, 49, 50. Plaintiffs have not alleged that defendant Anthony, Jr. was involved in any of these allegations. There must be *no question* but that the act was taken outside the judge's jurisdiction.  Miller v. Davis, 521 F.3d 1142, 1147 (9th Cir. 2008).  See Meek v. County of Riverside, 183 F.3d 962, 965 (9th Cir. 1999) (explaining that "a judge is not deprived of immunity because he takes actions which are in error, are done maliciously, or are in excess of his authority").  Here, the allegations relate solely to Judge Anthony Jr.'s function as ALJ in the workers' compensation proceeding.  Therefore, defendant Anthony, Jr. should be dismissed.

1    *Loss of Consortium (Seventh Claim)*

2            This claim has been brought only by plaintiff Elizabeth U.  However, a state law

3    claim for loss of consortium is derivative in nature when brought by a spouse on account of

4    injuries allegedly suffered at the hands of a defendant by the other spouse; it can only exist if the

5    spouse directly impacted by the defendant's acts has a valid claim.  Tucker v. CBS Radio

6    Stations, Inc., 194 Cal. App. 4th 1246, 1256, 124 Cal. Rptr. 3d 245 (2011).  Moreover, there is

7    no federal free standing loss of consortium for the statutory discrimination claims.  Barker v.

8    Halliburton, 645 F.3d 297, 300 (5th Cir. 2011).  There being no available state law claim from

9    which plaintiff Elizabeth U. can derive her loss of consortium (all state law claims should be

10   dismissed as being barred by workers compensation exclusivity), given her derivative status, this

11   claim should be dismissed without leave to amend.

12   *Motions to Strike*[14]

13           Teichert moves to strike all references to and requests for punitive damages in the

14   FAC as plaintiffs have not alleged malicious, oppressive or fraudulent conduct to support such a

15   request.  Although 42 U.S.C. § 1981a(b)(1) permits punitive damages where defendant engages

16   in discriminatory practices with malice or reckless indifference to plaintiff's constitutional rights,

17   plaintiff has not alleged this type of conduct.  Plaintiff is correct in arguing that he is not required

18   to prove malice or reckless indifference at the pleading stage, but he must properly plead such

19   facts.  Pleading requirements in both diversity and federal question cases are procedural in nature

20   and are controlled by Fed. R. Civ. P. 9(b) which provides for a rather lenient standard and

21   specifies only that "malice, intent, knowledge, and other conditions of a person's mind may be

22   alleged generally."  Therefore, defendant Teichert's motion to strike will be granted.  On

23   amendment, plaintiff must either allege facts to show Teichert acted with malice or reckless

24   _____

25           [14]  Because the undersigned recommends that all defendants except Teichert be dismissed
     without leave to amend, all motions to strike brought by those moving defendants will be vacated
26   as moot.

indifference, or eliminate all references to punitive damages.

CONCLUSION

Accordingly, IT IS ORDERED that:

1.  The request for judicial notice, filed March 4, 2011, (dkt. no. 22), by the Smolich Defendants, is granted.

2.  Plaintiffs' request for judicial notice, filed March 24, 2011, (dkt. no. 39), is denied.

IT IS HEREBY RECOMMENDED that:

1. Claims First, Second, Third, Fourth, Fifth, and Sixth (various state law claims) be dismissed without leave to amend as to all defendants on the basis of the workers compensation exclusivity bar;

2. In any event, defendant Thomas Anthony, Jr. be dismissed from all claims without leave to amend;

3. Claim Eighth (Title VII) be dismissed with leave to amend for failure to demonstrate administrative exhaustion; only defendant Teichert is pertinent to this claim;

4. Claim Ninth (42 U.S.C. § 1981) be dismissed with leave to amend; this claim is pertinent to defendant Teichert only;

5. Claim Seventh (loss of consortium) be dismissed without leave to amend.

6.  All motions to strike by all defendants except Teichert be vacated as moot; Teichert's motion to strike is granted with leave to amend.

6.  Plaintiff Daniel Ungureanu be ordered to file an amended complaint for discrimination under Title VII (demonstrate exhaustion) and 42 U.S.C. § 1981 against defendant Teichert only within twenty-eight (28) days of an order adopting these findings and recommendations; failure to file an amended complaint within the recommended time period will result in a recommendation that this defendant be dismissed.

\\\\

1    These Findings and Recommendations resolve Docket #s: 14, 15, 16, 17, 18, 19,

2  20, 21, 24, 26, and 28.

3    These findings and recommendations are submitted to the United States District

4  Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within

5  fourteen (14) days after being served with these findings and recommendations, any party may

6  file written objections with the court and serve a copy on all parties.  Such a document should be

7  captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the

8  objections shall be served and filed within fourteen (14) days after service of the objections.  The

9  parties are advised that failure to file objections within the specified time may waive the right to

10  appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

11  DATED: October 12, 2011

12

13                         /s/ Gregory G. Hollows
                     UNITED STATES MAGISTRATE JUDGE

14
   GGH:076
15  Ungureanu316.mtns.wpd

16

17

18

19

20

21

22

23

24

25

26