1

2

3

4

5

6

7

8                       IN THE UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10    DANIEL UNGUREANU, et al.,

11               Plaintiffs,                      No. CIV S-11-0316 LKK GGH PS

12         vs.

13    A. TEICHERT & SON, et al.,

14               Defendants.               FINDINGS AND RECOMMENDATIONS

15    _____/

16    _Introduction and Summary_

17               Previously pending on this court's law and motion calendar for March 15, 2012,

18    were defendant A. Teichert & Son, Inc.'s ("Teichert") motion to dismiss and motion to strike,

19    filed February 6, 2012.  Larry Kazanjian appeared for defendant.  Plaintiffs appeared

20    telephonically in pro se.

21               This should be the final time the claims in plaintiff's ever-changing complaint

22    should be reviewed by this court.  At this juncture, the court can only find that plaintiff is

23    manipulating the anti-discrimination laws to substitute for state law claims which are otherwise

24    barred by workers compensation exclusivity.  For various other reasons as well, including

25    administrative limitations and statute of limitations reasons, the two existing claims (Title VII

26    and 42 U.S.C. § 1981), and the one most recently added (ADA), should be dismissed without

1

1  leave to amend.

2  *Concise Factual Background*

3          While the undersigned will later review allegations of the Second Amended

4  Complaint in detail, the underlying factual background can be concisely stated.  Plaintiff claims

5  he was working as a certified heavy equipment operator in May, 2004, when a co-worker

6  intentionally bumped into him using another machine while plaintiff was operating a scraper,

7  causing neck and back injuries.  Although plaintiff reported the incident to his foreman, the

8  foreman did not file an incident report, and the co-worker was not trained or disciplined. (SAC ¶

9  10.)  The SAC alleges multiple incidents of similar improper behavior by co-workers which

10  caused plaintiff injury, but for which Teichert allegedly took no action.  (Id. at ¶¶ 11 - 15.)

11  Eventually, plaintiff was so injured from being rammed on three separate occasions that his last

12  day of work was July 11, 2005.  (Id. at ¶ 14.)

13          Plaintiff thereupon commenced upon a lengthy journey in workers compensation

14  proceedings, although plaintiff never alleges when these proceedings officially commenced, or

15  when they officially ended, at least administratively.  Suffice it to say that as the years went by

16  plaintiff became increasingly discouraged by the results of various doctor's evaluations, his

17  lawyer's alleged misfeasance and adverse decisions.  This discouragement was eventually

18  transmuted into a belief that all involved in the workers compensation proceedings, his lawyer,

19  the opposition, medical personnel, and eventually the administrative law judge himself, were

20  engaged in a conspiracy of sorts to deny him benefits.

21  *Procedural Background*

22          Plaintiff commenced this action on February 3, 2012 alleging only state claims

23  related to the tractor bumping incidents, and the perceived unfairness in the workers

24  compensation proceedings.  This filing was quickly followed by the First Amended Complaint,

25  adding a claim for "discrimination."  This claim simply incorporated the previous allegations

26  (having nothing to do with discrimination), added an allegation of Romanian "race" (assuming

such is an ethnic group as opposed to merely a political demarcation), and concluded that all of the above was caused by "racial" discrimination on the part of the employer Teichert in violation of 42 U.S.C. 2000e et seq and 42 U.S.C § 1981 (discrimination in employment contract).  The other defendants in the non-discrimination claims included lawyers and insurers in the workers compensation process, a doctor who performed an evaluation, and the administrative law judge himself.

Various motions to dismiss were made.  All of the state claims were dismissed on the basis of workers compensation exclusivity or immunity.  Plaintiff Elisabeth Ungureanu's one claim, a consortium claim, was dismissed without leave to amend.   Plaintiff was given leave to amend the discrimination claims (Title VII and § 1981) against Teichert only in order to allege some discriminatory nexus for the events which befell plaintiff.  See Findings and Recommendations dated October 13, 2011 and Order adopting the Findings dated December 22, 2011.

Despite having his state law claims dismissed without leave to amend, plaintiff realleged these claims in the Second Amended Complaint (SAC). Although Elizabeth Ungureanu remains a captioned plaintiff, the SAC does not contain any claims pertaining to her.  Paragraphs 24 and 25 of the (SAC) did expand upon his discrimination claims – plaintiff was claiming a hostile work environment due to jokes about his Romanian ancestry made by co-workers and a first line supervisor.  The Americans with Disabilities Act (ADA Title I) added claim was based on the sole allegation that co-workers called him a "bobblehead," on account of plaintiff's "moving his head constantly due to the pain in the neck."  SAC at ¶ 21.  This was the sum total of the ADA allegations.  The ensuing lengthy recitation of events which befell plaintiff in the workers compensation proceedings was similar to what had been alleged in the past, but with an added tag line that the events demonstrated that "discrimination continued."

\\\\\\
\\\\\\

1   DISCUSSION

2           The undersigned will dispense with repeating the standards on a motion to dismiss

3   as those were fully set forth in the October 13, 2011 Findings and need not be repeated.

4           A.  The Court's Jurisdiction

5           Despite this court's previous advisement that there was federal question

6   jurisdiction, (28 U.S.C. § 1331), based on two employment discrimination claims, plaintiffs

7   continue to invoke diversity jurisdiction.  As all state law claims were dismissed by the previous

8   findings and recommendations, diversity (28 U.S.C. § 1332), is no longer a necessary or proper

9   basis for jurisdiction in this case.

10          B.  State Law Claims

11          In the previous findings and recommendations, plaintiffs' claims for negligent

12  hiring, negligent supervision, negligent retention, fraud, and unfair business practices were

13  dismissed without leave to amend.[1]  The "law of the case" doctrine provides that the decisions on

14  legal issues made in a case "should be followed unless there is substantially different evidence ...

15  new controlling authority, or the prior decision was clearly erroneous and would result in

16  injustice."  Handi Investment Co. v. Mobil Oil Corp., 653 F.2d 391, 392 (9th Cir. 1981); see also

17  Waggoner v. Dallaire, 767 F.2d 589, 593 (9th Cir. 1985), cert. denied, 475 U.S. 1064 (1986);

18  Thomas v. Bible, 983 F.2d 152, 155 (9th Cir.1993).  Therefore, these claims are precluded by the

19  law of the case.  They will not be revisited and will be dismissed.

20          C.  Plaintiff Elizabeth Ungureanu

21          The previous findings and recommendations dismissed Elizabeth's loss of

22  consortium claim without leave to amend because there were no state law claims remaining from

23  which she could derive her loss of consortium claim.  As previously stated, there is no federal

24  free standing loss of consortium for the statutory discrimination claims.  Barker v. Halliburton,

25  ─────────────────

26          [1]  Plaintiffs' argument that the docket indicates that the order grants leave to amend the
    state law claims points out a docketing error that has now been corrected.  See Dkt. no. 63.

645 F.3d 297, 300 (5th Cir. 2011).  Therefore, Elizabeth should remain dismissed from this action as the only claim which she might have maintained was dismissed.  See also Thomas v. Bible, 983 F.2d 152, 155 (9th Cir.1993) (law of the case doctrine).

    D. Discrimination Claims

The SAC includes discrimination claims that appear to be brought not only under Title VII and 42 U.S.C. § 1981, but now, also the Americans With Disabilities Act.  Plaintiff, whose claims are based on his Romanian ancestry, as well as his physical disabilities as a result of defendant's alleged actions, alleges violations by Teichert both during his employment, and during the workers' compensation proceedings.

As before, the SAC is divided into two temporal phases: the on-the-job events, and the workers compensation proceedings.  The motion to dismiss involves assertions of both administrative and court filing untimeliness, and the Noerr-Pennington Doctrine.  The issues raised by these three claims are outlined here.

Title VII Claim: (1) Alleged violations in the workplace – whether plaintiff timely exhausted his claims; and whether his claim was tolled during the pendency of the workers' compensation proceedings; (2) Alleged violations during workers' compensations proceedings – (a) whether plaintiff exhausted these claims; (b) whether the allegations sufficiently relate discrimination; and (c) whether the Noerr-Pennington doctrine precludes these claims in any event.

42 U.S.C. § 1981 Claim: (1) Alleged workplace violations – (a) whether this claim is barred by the statute of limitations; and (b) whether equitable tolling applies during the time plaintiff was pursuing workers' compensation remedies; (2) Violations during workers' compensations proceedings – a) whether § 1981 applies to such proceedings; (b) whether the allegations sufficiently relate to discrimination violative of § 1981, and (c) whether the Noerr-Pennington doctrine precludes these claims.

\\\\\

ADA Claim: limited to alleged workplace violations only – whether this claim was timely exhausted, and whether it states a claim in any event.

    1.  Title VII Claim

The court set forth the following exhaustion requirements in the previous findings and recommendations.  Before bringing a Title VII action in federal court, a plaintiff must first exhaust administrative remedies by filing a timely charge with the Equal Employment Opportunity Commission (EEOC).  42 U.S.C. § 2000e-5(b).  See Lyons v. England, 307 F.3d 1092, 1103-04 (9th Cir. 2002); Sommantino v. United States, 255 F.3d 704, 707 (9th Cir. 2001); EEOC. v. Farmer Bros. Co., 31 F.3d 891, 899 (9th Cir.1994).[2]  This charge must be filed within 180 days of the last discriminatory act (or within 300 days in a state, such as California, which has its own anti-discrimination laws and agency, and where the aggrieved employee has instituted proceedings with a state or local agency).  See 42 U.S.C. § 2000e-5(e)(1).  The district court complaint must be filed within 90 days of receipt of a Right-to-Sue Letter from the EEOC.  See 42 U.S.C. § 2000e-5(f)(1).  The scope of the district court's jurisdiction is limited by the allegations contained in the EEOC charge and the EEOC investigation.  See Farmer Bros. Co.  31 F. 3d at 891.

Attached to the SAC is a right-to-sue letter, dated **November 25**, **2011**.  It states that although less than 180 days had passed since the filing of this charge, the Director had determined that it was unlikely the EEOC would be able to complete its administrative processing within 180 days from the filing of this charge.  (SAC, Ex. D, dkt. no. 65 at 50.)  Plaintiff's charge with the EEOC includes allegations of discrimination both at the Teichert job and during the workers' compensation proceedings.[3]  Although plaintiff alleges he was

---

[2]  The timing requirements are subject to waiver, estoppel, and equitable tolling.  See Zipes v. Trans World Airlines, 455 U.S. 385, 398 (1982)

[3]  In his EEO claim, plaintiff indicated that he had not filed a charge previously on any of the matters raised therein.  (SAC, Ex. D, dkt. no. 65 at 58.)

terminated on July 11, **2005**, in the form completed with the California Department of Fair

Employment and Housing, plaintiff stated that the latest date of the continuing discrimination

was November 15, 2011.  The DFEH right to sue notice was issued on **November 17, 2011**. (Id.,

dkt. no. 65 at 51.)  It is unknown when the workers' compensation action was terminated, if it

even has been; however, in his complaint with the EEOC, plaintiff alleges that the workers'

compensation appeals board judge discriminated against him on **October 26 and 27, 2011**,

presumably when a hearing was held.  (SAC, Ex. D.)  Plaintiff initiated this action on **February**

**3, 2011.**

a. Alleged Workplace Violations

Clearly, plaintiff did not timely exhaust his administrative remedies in regard to

alleged discrimination while he was employed by Teichert.  He received his right-to-sue notice

six years and four months after he ended his employment with Teichert, and over nine months

after initiating this action.

Plaintiff contends that he should be entitled to tolling during the time he was

pursuing his workers' compensation remedies, citing Elkins v. Derby, 12 Cal.3d 410, 115

Cal.Rptr. 641 (1974).  (Opp. at 4-5).  The principle enunciated in Elkins is that a statute of

limitations is tolled during the time a plaintiff is exhausting his administrative remedies in a

workers' compensation proceeding, through good faith and without prejudice to the defendant.

Id. at 414-417.  Elkins, a California case, would not apply to a Title VII claim.  Although the

issue of whether state tolling provisions should apply in § 1981 actions is subject to dispute, see

discussion *infra*, federal tolling provisions apply in Title VII cases because Title VII carries its

own statute of limitations.  42 U.S.C. § 2000e-5(f).  "When Congress has provided a federal

statute of limitation for a federal claim ... state tolling ...provisions are not applicable."  Brown v.

Hartshorne Public School Dist. No. 1, 926 F.2d 959, 961 (10th Cir.1991).  See also Johnson v.

Railway Express Agency, 489 F.2d 525 (6th Cir.1973), aff'd on other grounds, 421 U.S. 454, 95

S.Ct. 1716, 44 L.Ed.2d 295 (1975) (refusing to apply state saving statutes in action under Title

1   VII); <u>Burnett v. New York Cent. R.R. Co.</u>, 332 F.2d 529 (6th Cir.1964), <u>rev'd on other grounds</u>,

2   380 U.S. 424, 85 S.Ct. 1050 (1965) (same).

3          Indeed, a similar "other remedy" tolling principle has been considered and

4   rejected in Title VII cases.  In <u>Delaware State College v. Ricks</u>, 449 U.S. 250, 101 S.Ct. 498

5   (1980), the Supreme Court upheld its previous ruling that:

6          the pendency of a grievance, or some other method of collateral
           review of an employment decision, does not toll the running of the
7          limitations periods.  <u>Electrical Workers v. Robbins & Myers, Inc.</u>,
           429 U.S. 229, 97 S.Ct. 441 (1976). [footnote omitted]  The
8          existence of careful procedures to assure fairness in the tenure
           decision should not obscure the principle that limitations periods
9          normally commence when the employer's decision is made.

10  <u>Id.</u> at 261, 506.[4]  <u>See</u> also <u>Johnson v. Lucent Technologies</u>, 633 F.3d 1000, 1009 (9th Cir. 2011)

11  quoting <u>Ricks</u>.

12         Nor does it make any sense at all, as plaintiff attempts, to call all the events in the

13  workers compensation proceeding "continued discrimination," i.e., the continuing violation

14  theory, this making all events commencing in or about 2004 timely brought with the November

15  2011 exhaustion.

16         The continuing violation theory provides that "a systematic policy
           of discrimination is actionable even if some or all of the events
17         evidencing its inception occurred prior to the limitations period."
           <u>Sosa</u>, 920 F.2d at 1455. A continuing violation may be established
18         by either demonstrating a "policy or practice" of discrimination or
           by " 'demonstrating a series of related acts against a single
19         individual.' " <u>Id</u>. (quoting <u>Green v. Los Angeles County</u>, 883 F.2d
           1472, 1480 (9th Cir.1989)).
20
    <u>Freeman v. Oakland Unified School District</u>, 291 F.3d 632, 638 (9th Cir. 2002).
21
           In the latter instance, "[the] question ... boils down to whether
22         sufficient evidence supports a determination that the 'alleged
           discriminatory acts are related closely enough to constitute a
23         continuing violation.' " <u>Id</u>. (quoting <u>Berry v. Board of Supervisors</u>,
           715 F.2d 971, 981 (5th Cir.1983)).
24
    <u>Green v. L.A. County Supt. Of Schools</u>, 883 F.2d 1472, 1480-81 (1989).
25

26         [4]  <u>Ricks</u> also involved a § 1981 claim.  <u>See</u> discussion <i>infra</i>.

                                        8

1  Plaintiff cannot contend that all the discrimination acts he has alleged both at the workplace and

2  in the workers compensation proceedings are related simply because the events happened to him.

3  Rather, the focus is on the alleged acts themselves.  The acts evidence no "systematic policy" as

4  that term is known in Title VII law.  And, it cannot logically be said that alleged name calling

5  and allegations of hostile work environment in the workplace are sufficiently related, if related at

6  all, to allegations that the employer Teichert later manipulated and defrauded plaintiff during the

7  workers compensation proceedings as a means by which to discriminate/retaliate against

8  plaintiff.  This is especially true in that plaintiff filed no discrimination complaint with anyone

9  for approximately six years after he was terminated.

10         Because plaintiff clearly failed to timely exhaust his workplace Title VII claims,

11  and tolling does not apply during the time plaintiff was pursuing workers' compensation

12  remedies, the Title VII on-the-job discrimination claim must be dismissed.

13              b.  Alleged Violations During Workers' Compensation Proceedings

14         Plaintiff stated in his EEO application that the latest date of the continuing

15  discrimination was November 15, 2011.  (SAC, Ex. D, dkt. no. 65 at 53.)  Plaintiff's EEOC

16  claim included allegations of discrimination during the workers' compensation proceedings in

17  addition to claims of discrimination in the workplace.  Although plaintiff did not raise

18  discrimination in the workers' compensation proceedings as a distinct claim until the SAC, filed

19  January 18, 2012, he did raise many of the same allegations in his complaint and First Amended

20  Complaint, filed February 3 and 11, 2011, respectively.  The allegations in those complaints are

21  that Dr. Shelub, a workers' compensation QME, "was either improperly influenced by

22  TEICHERT'S adjuster, BRAGG and their defense attorney Ryan Frazier, or was a co-

23  conspirator, to change the reports for the benefit of TEICHERT and the detriment of Plaintiff."

24  (Compl., ¶ 3.8, FAC, ¶ 22.)  In reference to the workers' compensation proceedings, plaintiff also

25  alleges in the FAC that defendants told him "that they would drag this case out for twenty years

26  and that Plaintiff would be dead before it was completed.  Plaintiff was further told that they

9

1  would do any thing to save the company money."  (FAC at ¶ 44.)

2          The SAC for the most part repeats these allegations and enlarges on them by

3  alleging that Teichert conspired with Dr. Shelub, and he wrote three different QME reports at

4  Teichert's insistence, each signed on a different date but purporting to be based on the same

5  evaluation date.  (SAC, ¶ 45.)  Also alleged is that after taking plaintiff's deposition in the

6  workers' compensation case, Teichert cut his benefits for a period of time.  (Id. at ¶¶ 46, 48.)

7  Plaintiff has added allegations occurring since the filing of the FAC, including that the defense

8  attorney told plaintiff he would be reimbursed for all out of pocket medical expenses owing, but

9  that plaintiff was never paid.  (Id. at ¶ 53.)  The most recent allegation in the SAC is dated

10  October, 2011.  (Id. at ¶ 52.)

11          The undersigned need not analyze the timeliness of the exhaustion for this

12  workers compensation temporal phase of the Title VII, and will assume that the "continuing

13  violation doctrine would apply to all alleged acts within the worker's compensation proceedings.

14  However, plaintiff did not in any manner relate a factual nexus between the worker's

15  compensation events and discrimination.  He simply labels every non-discriminatory-on its-face,

16  untoward event in the workers compensation proceedings, described supra, as "discrimination."

17  Plaintiff never relates why he believes these actions evidence discrimination on the part of

18  Teichert, as opposed to simply events in the workers compensation proceedings which were

19  unfavorable to plaintiff in his view.  The previous Findings and Recommendations advised

20  plaintiff that his discrimination allegations were simply conclusions with no reasonable nexus to

21  discrimination or retaliation.  Plaintiff was given leave to amend to cure these deficiencies, and

22  he merely reiterated them.  Moreover, plaintiff never alleged what *Title VII* protected activity he

23  engaged in which was then followed by years of workers compensation proceedings in

24  "retaliation" or "discrimination" for the non-described protective activity.  See Raad v. Fairbanks

25  Sch. Dist, 323 F.3d 1185, 1197-98 (9th Cir. 2003) (the alleged retaliation must have been taken

26  as a result of engaging in a Title VII protected activity).  Plaintiff's repeated assertions that

10

1    Teichert was angry at him because he had instituted *workers compensation* proceedings does not

2    imply a Title VII retaliatory purpose – just the opposite.  And, not having made any type of

3    informal complaint of Title VII retaliation contemporaneous with his termination, or filing an

4    EEOC complaint until 2011, makes it difficult to allege that plaintiff was terminated in 2005 in

5    retaliation for having engaged in Title VII protected activity.

6           Even if these allegations could be deemed sufficient to allege retaliation,

7    defendant Teichert asserts that the discrimination claim (whether based on Title VII or § 1981)

8    cause of action in the Complaint should be dismissed because defendant's conduct was entitled

9    to Noerr-Pennington immunity. [5]

10          The <u>Noerr-Pennington</u> doctrine provides immunity to those parties who petition

11   any department of the government for redress.  <u>California Pharmacy Management, LLC v. Zenith</u>

12   <u>Insurance Co.</u>, 669 F.Supp.2d 1152, 1167 (C.D. Cal. 2009).  "[A]ctions taken in anticipation of

13   proceedings before the WCAB [are] protected by the <u>Noerr-Pennington</u> doctrine." <u>Id.</u>, citing

14   <u>Premier Med. Mgmt. Sys., Inc. v. California Ins. Guarantee Assn.</u>, 136 Cal.App.4th 464, 479, 39

15   Cal.Rptr.3d 43 (2006).  <u>See also California Motor Transp. Co. v. Trucking Unlimited</u>, 404 U.S.

16   508, 510 , 92 S.Ct. 609, 611-12 (extending <u>Noerr-Pennington</u> immunity to right to petition before

17   administrative agencies and courts).  The purpose of the <u>Noerr-Pennington</u> doctrine is to "prevent

18   courts from interfering with the accessibility and integrity of schemes like the WCAB."  Not only

19   does the doctrine protect parties while litigating before the WCAB or other petitioning activity, it

20   also protects "activity incidental to and in anticipation of petitioning activity." <u>Id.</u> at 1167.  <u>See</u>

21   <u>Sosa v. DIRECTV</u>, 437 F.3d 923, 934-35 (9th Cir.2006).  <u>Noerr-Pennington</u> has been applied to

22   "virtually any tort," <u>Premier Med. Mgmt. Sys., Inc.</u>, 136 Cal.App.4th at 478, 39 Cal.Rptr.3d at

23   54 (citations omitted), including civil rights actions.  <u>Boulware v. State of Nev., Dept. of Human</u>

24   <u>Resources</u>, 960 F.2d 793, 800 (9th Cir. 1992).  The doctrine also bars liability for "activities

25   _____

26       [5] <u>Eastern R. Conf. v. Noerr Motors</u> (1961) 365 U.S. 127, 81 S.Ct. 523 ( <u>Noerr</u> ); <u>Mine</u>
<u>Workers v. Pennington</u> (1965) 381 U.S. 657, 85 S.Ct. 1585 (<u>Pennington</u>).

1  undertaken in the course of representing a client in litigation." <u>Lynn v. Friedenthal</u>, 2011 WL

2  6960823, *7 (C.D. Cal. Dec. 2, 2011) (citing <u>Premier Me Systems, Inc. v. California Ins.</u>

3  <u>Guarantee Ass'n.</u>, 136 Cal.App.4th 464, 478-79, 39 Cal.Rptr.3d 43 (2006).

4  As succinctly stated in a recent Northern District case:

5   "The Noerr-Pennington doctrine ensures that those who petition
   the government for redress of grievances remain immune from
6   liability for statutory violations, notwithstanding the fact that their
   activity might otherwise be proscribed by the statute involved."
7   <u>White v. Lee</u>, 227 F.3d 1214, 1231 (9th Cir.2000).
   Noerr-Pennington protection applies to citizens' use of the courts.
8   <u>See</u> <u>Professional Real Estate Investors, Inc. v. Columbia Pictures</u>
   <u>Indus., Inc.</u>, 508 U.S. 49, 56-57, 113 S.Ct. 1920, 123 L.Ed.2d 611
9   (1993). Though Noerr-Pennington first arose in the antitrust
   context, it now applies to litigation in all contexts. <u>White</u>, 227 F.3d
10  at 1231.

11  "Under the Noerr-Pennington rule of statutory construction,
   [courts] must construe federal statutes so as to avoid burdening
12  conduct that implicates the protections afforded by the Petition
   Clause unless the statute clearly provides otherwise." <u>Sosa v.</u>
13  <u>DIRECTV, Inc.</u>, 437 F.3d 923, 931 (9th Cir.2006). Plaintiff has
   pointed to nothing in either Title VII or Section 1981 proscribing
14  Defendant's post-termination litigation actions at issue here. Nor
   has Plaintiff disputed Defendant's characterization of its actions as
15  petitioning.

16  <u>Nazir v. United Airlines</u>, 2009 WL 2912518 (N.D. Cal. 2009)

17         The only exception to this general immunity is the sham litigation exception

18  which applies where petitioning conduct is merely a sham or cover for an attempt to directly

19  interfere with the business relationships of a competitor.  <u>California Pharmacy Management</u>, 669

20  F.Supp.2d at 1168.  Thus, for example, where a defendant's conduct includes fraud upon the

21  court or intentional misrepresentations to the court that "deprive[s] the litigation of its

22  legitimacy," the sham exception will apply.  <u>Kottle v. Nw. Kidney Ctrs.</u>, 146 F.3d 1056, 1060

23  (9th Cir. 1998).

24         In a case making similar allegations, the court held that plaintiff's claim that the

25  opposing attorneys conspired with the court to deprive her of her constitutional rights and her

26  relationship with her child, were found to be protected by the <u>Noerr-Pennington</u> doctrine.

1   Defendants and their attorneys have the right to present their positions in a court of law.  Lynn,

2   2011 WL 6960823, at *8.

3          Here, plaintiff first argues that Noerr-Pennington does not apply, then seems to

4   argue for the sham exception, but summarizes cases only, and does not set forth the facts of this

5   case which merit the sham exception. (Opp. at 2-3.)

6          The allegations in the SAC are that the QME physician assigned in the worker's

7   compensation case wrote three different QME reports, signed on three different dates, but based

8   on the same single evaluation date, at the insistence of defendant.  (SAC ¶ 45.)  Plaintiff alleges

9   that one of the reports was completed at the request of the insurance company but it was not

10  served on plaintiff.  Plaintiff alleges it contains a falsified "signature date" so that the report

11  would be considered timely.  (SAC ¶ 47.)  At the worker's compensation hearing, plaintiff

12  asserts the judge ordered the dismissal of QME Dr. Shelub and ordered a new QME.  Also

13  alleged is that after this hearing, the defense attorney told plaintiff "with a lot of anger... 'I will

14  do anything to save insurance company money.'" (Id.)  According to the SAC, defendant

15  appealed from this decision and lied in his petition to dismiss the judge's order, arguing that the

16  doctor finished his report on time.  The SAC further alleges that on September 30, 2010,

17  defendant discriminated against plaintiff again by cutting all his benefits.  (Id. at ¶ 48.)  This

18  claim was addressed at a WCAB hearing on May 25, 2011.  (Id. at ¶ 49.)  Plaintiff further alleges

19  that the WCAB judge asked defendant to reimburse plaintiff after plaintiff pointed out numerous

20  illegal actions including fraud and discrimination by defendant.  (Id. at ¶ 54, Ex. J, p. 3:17-20.)

21  Minutes of the proceeding before the WCAB state in part:

22          During the conference, applicant stated that defendant has ceased
            paying benefits.  The WCJ understands these benefits to be
23          treatment for the admitted orthopedic condition.  The WCJ has not
            been able to find any order in the Record of Proceedings that
24          suspends any obligation of defendant to provide benefits.

25  (Id.)

26  \\\\\

Based on the record before the court, the sham exception would not apply in this case.  As in <u>Kottle</u>, there are no facts presented or that could possibly be presented, indicating that plaintiff was a business competitor to Teichert.  <u>Kottle</u>, 146 F.3d at 1060.  Furthermore, defendant's actions in the workers' compensation proceedings, as described in the SAC, came to light during that litigation, and therefore did not "deprive[s] the litigation of its legitimacy." <u>Id.</u> at 1060.

The Title VII claim as it relates to the workers compensation proceedings should be dismissed.

2. <u>Claim Under 42 U.S.C. § 1981</u>

42 U.S.C. § 1981 provides that all persons within the jurisdiction of the United States shall have the same right in every State to make and enforce contracts, to sue, to be parties, to give evidence, and to enjoy the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens and shall be subject to the same punishment, penalties, and taxes.  42 U.S.C. § 1981.  Subsection (b) of this provision states that the term "make and enforce contracts" includes "the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."

In response to the holding of <u>Patterson v. McLean Credit Union</u>, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), which construed § 1981 narrowly to exclude a claim for hostile work environment discrimination, Congress added subsection (b), which has been construed to encompass this particular type of discrimination claim.  <u>Manatt v. Bank of America, NA</u>, 339 F.3d 792, 797 (9th Cir. 2003).  Therefore, at least with respect to race/ethnicity, the elements of Title VII and § 1981 are indistinguishable in the employment (contract) context.  <u>Johnson v. Riverside Healthcare System</u>, 534 F.3d 1116, 1122 (n.3) (9th Cir. 2010); <u>Jurado v. Eleven-Fifty Corp.</u>, 813 F.2d 1406, 1412 99th Cir. 1987).[6]

---

[6]  It seems odd that Congress, having gone to such lengths to create a comprehensive, mandatory, administrative process for Title VII would simply disregard that entire process in

1    42 U.S.C. § 1981 does not carry an exhaustion requirement.  Surrell v. California

2 Water Service Co., 518 F.3d 1097, 1103 (9th Cir. 2008).  For civil rights actions under 42 U.S.C.

3 § 1981, federal courts apply the statute of limitations of the state in which the claim arises.  See

4 Johnson v. Railway Express Agency, 421 U.S. 454, 462 (1975); Donoghue v. County of Orange,

5 848 F.2d 926, 929 (9th Cir. 1987).  State law also determines the application of tolling doctrines.

6 See Johnson, 421 U.S. at 464-65 (state tolling provisions apply in § 1981 action unless an

7 important federal policy will be undermined by their application); Conerly v. Westinghouse Elec.

8 Corp., 623 F.2d 117, 120 (9th Cir.1980) (state tolling doctrines applicable in § 1981 case).

9    While normally the burden of proving that the statute of limitations has expired

10 falls on the defendant, see Bradford-White Corp. v. Ernst & Whinney, 872 F.2d 1153, 1161 (3d

11 Cir. 1989), when the statute of limitations defense shows on the face of the complaint, the burden

12 of alleging facts which would extend the statute falls upon the plaintiff.  Conerly, 623 F.2d at

13 120; Rutledge v. Boston Woven Hose & Rubber Co., 576 F.2d 248, 249 (9th Cir.1978).  "[I]f the

14 plaintiff . . . pleads facts and the facts show that he is entitled to no relief, the complaint should

15 be dismissed.  There would be no point in allowing such a lawsuit to go any further; its doom is

16 foretold."  American Nurses' Ass'n v. Illinois, 783 F.2d 716, 727 (7th Cir.1986).  See Tregenza

17 v. Great Am. Communications Co., 12 F.3d 717, 718 (7th Cir.1993) (where affirmative defense

18 of statute of limitations follows inevitably from facts pleaded in complaint, Rule 12(b)(6)

19 dismissal may be proper), cert. denied,  511 U.S. 1085, 114 S. Ct. 1837, 128 L.Ed.2d 465 (1994);

20 Thomas v. Farley, 31 F.3d 557, 558-559 (7th Cir. 1994) (plaintiff choosing "to plead particulars,

21 and they show he has no claim, then he is out of luck – he has pleaded himself out of court.")

22    Employment discrimination claims under §1981 are subject to a two year statute

23 of limitations for disparate treatment and retaliation claims.  Leland v. City and County of San

24 Francisco, 576 F.Supp.2d 1079, 1092 (N.D. Cal. 2008).  Claims of hostile work environment are

25 _____

26 1991, but that, in essence, is what it did in making Title VII and § 1981 coterminous.

1   governed by a four year statute of limitations.  Id, citing Jones v. R.R. Donnelley & Sons, 541

2   U.S. 369, 124 S.Ct. 1836 (2004).[7]

3                   a.  Alleged Workplace Violations

4           The last alleged discriminatory violation occurred on July 11, 2005, when plaintiff

5   left defendant's employment.  Therefore, plaintiff would have had to file his action prior to July

6   11, 2009, in order to avoid the statute of limitations.

7           In opposition, plaintiff seeks equitable tolling for the time during which he

8   pursued his workers' compensation claim, citing Elkins v. Derby, 12 Cal.3d at 414-20, 115

9   Cal.Rptr. 641.  (Opp. at 4-5).  Unlike the earlier discussion involving plaintiff's Title VII claim,

10  the analysis is more complex in the § 1981 context.  Ricks and its progeny have applied their

11  own brand of federal law to tolling §1981 claims, while other cases, such as Johnson, 421 U.S. at

12  464-65, apply state tolling provisions as part of the same procedure applying state law statutes of

13  limitations to § 1981 cases.  The undersigned concludes that under either application, plaintiff

14  may not avail himself of tolling during the time he was pursuing workers' compensation

15  remedies.

16          Ricks involved not only a Title VII claim, but also a § 1981 claim.  It applied its

17  holding that the pendency of a grievance or other collateral review does not toll the statute of

18  limitations, to both claims.  449 U.S. at 250, 256-62, 101 S.Ct. 498, 503-06 (1980).  This ruling

19  was despite the court's acknowledgment that the statute of limitations in § 1981 actions is that

20  borrowed from similar state law claims.  Id. at 255, 502 n. 5.  The court clearly applied its

21  reasoning to both Title VII and § 1981, hinting in a footnote that it intended its analysis to apply

22  to "the civil rights laws."  Id. at 261, 506 n. 15.  It is otherwise unclear why the Ricks court

23  declined to apply state tolling provisions to the § 1981 portion of plaintiff's action in that case.

24  _____

25          [7] There is no need here to go into a lengthy explanation of how 28 U.S.C. § 1658
    changed the rule for adoption of state statute of limitations after 1991.  Jones supplies that
    explanation and the reasons why a hostile environment claim would have double the limitations

26  period of an "ordinary" § 1981 claim.

1  As <u>Ricks</u> applies to the instant § 1981 claim, plaintiff may not receive the benefit of tolling

2  during the workers' compensation process.

3          Nevertheless, both the Supreme Court and other courts have applied state tolling

4  provisions in § 1981 cases.  <u>See Johnson</u>, 421 U.S. at 464-65 (state tolling provisions apply in §

5  1981 action unless an important federal policy will be undermined by their application); <u>Conerly</u>

6  <u>v. Westinghouse Elec. Corp.</u>, 623 F.2d 117, 120 (9th Cir.1980) (state tolling doctrines applicable

7  in § 1981 case where not inconsistent with Constitution or other federal law).  It should be noted

8  that both <u>Johnson</u> and <u>Conerly</u> were decided by the Supreme Court prior to <u>Ricks</u>.  Unlike Title

9  VII, however, which carries its own statute of limitations,  42 U.S.C. § 2000e-16(c), section 1981

10  does not have its own statute of limitations, and therefore must borrow from state law.  Even

11  when an analysis is undertaken by employing state tolling provisions, the same result ensues.

12          Under California law, a plaintiff is entitled to equitable tolling as
              he pursues a remedy in another forum, when his actions establish
13          (1) timely notice to the defendants in filing the first claim; (2) lack
              of prejudice to the defendants in gathering evidence for the second
14          claim; and (3) good faith and reasonable conduct in filing the
              second claim. <u>Cervantes</u>, 5 F.3d at 1275.

15

16  <u>E.E.O.C. v. ABM Industries Inc.</u>, 249 F.R.D. 588, 591 (E.D.Cal.2008).

17          Defendant argues that <u>Elkins</u> is distinguishable because in that case the same

18  injury that served as the basis for the workers' compensation claim was also the basis for the civil

19  action: for injuries sustained while working at defendant's premises.  Here, defendant argues,

20  plaintiff's case is for discrimination, which is not the same basis as his workers' compensation

21  claim.

22          Under California law, a statute of limitations is tolled if plaintiff was pursuing

23  administrative or other recognized remedies, and *if* the remedies pursued were in respect to the

24  primary wrong sought to be addressed in the litigation.  <u>Donoghue</u>, 848 F.2d at 931; <u>see also</u>

25  <u>Daviton v. Columbia/HCA Healthcare Corp.</u>, 241 F.3d 1131, 1138 (9th Cir. 2001) (en banc).

26  Moreover, if California law determines that an administrative action is final, that law will govern

1   the parameters of equitable (statutory) tolling.

2          Plaintiff's action here runs afoul of the requirement that the primary facts at issue

3   in the pursuit of the other remedies must also be the facts at issue in the federal action.  As set

4   forth in the SAC, plaintiff sought relief before the Workers' Compensation Board for the sole

5   purpose of qualifying for medical disability payments based on his on-the-job injuries.  (SAC at

6   ¶¶ 45-54.)   It was after the matter reached a decision by the WCAB that plaintiff complained that

7   the Petition for Removal was "based on lies," at a hearing on March 9, 2009.  (SAC, Ex. A; dkt.

8   no.65 at 28.)  Even as late as May 25, 2011, a hearing was conducted in which the focus

9   continued to be plaintiff's medical condition as a result of his injuries at defendant's workplace,

10  the dates of those injuries, the benefits payable for those injuries, and  discovery related to that

11  case.  (Id. , Ex. J; dkt. no. 65 at 139-43.)

12          Although the court in its previous findings and recommendations refused to take

13  judicial notice of plaintiff's workers' compensation documents based on lack of foundation, the

14  aforementioned exhibits to the SAC have been considered for purposes of tolling only.

15          The federal action, on the other hand, is based on discrimination pursuant to Title

16  VII, the ADA, and the Civil Rights Act (42 U.S.C. §1981).  This case has nothing to do with the

17  complaints regarding injuries or benefits as a result of those injuries.  Rather, plaintiff now

18  believes his employer discriminated against him both at the workplace and in the proceedings

19  before the Workers' Compensation Board. This court action is far afield from the facts of the

20  administrative proceedings – too different to toll the statute of limitations based on pursuit of

21  other remedies.

22          Furthermore, plaintiff could have filed this action while continuing to pursue his

23  workers' compensation claim as it was an optional claim for injuries sustained in the workplace,

24  and not a precondition to filing suit.  See Harris v. Alumax Mill Products, Inc., 897 F.2d 400,

25  404 (9th Cir. 1990) (refusing to toll statute of limitations during workers' compensation

26  proceeding in a duty of fair representation suit).  Therefore, even if state tolling provisions are

1    applied, the statute of limitations should not be tolled in this case.

2              b. Workers' Compensation Proceedings

3              The undersigned will assume that a workers' compensation process is part of the

4    "contract" for § 1981 purposes.  Defendant argues that any allegations regarding discrimination

5    in the workers' compensation process cannot form the basis of liability under the Noerr-

6    Pennington doctrine.[8]  The undersigned has found with respect to the Title VII claim that the

7    Noerr-Pennington doctrine bars any claim of violation during the workers' compensation

8    proceedings.  The same result obtains for the § 1981 claim related to the workers compensation

9    proceeding.

10             3. ADA Claim

11             Defendant also argues that any ADA claim also fails under the Noerr-Pennington

12   doctrine.  (Mot. at 5.)  Because all alleged ADA violations occurred at the workplace, not during

13   the workers' compensation proceedings, the Noerr-Pennington doctrine does not apply to this

14   claim.  See SAC at 9.

15             An ADA claim under Title I requires exhaustion, however.  See 42 U.S.C. §

16   12117(a) (incorporating Title VII procedures).  A charge must be filed within 180 days of the

17   alleged discriminatory action.  See id.  See also Zimmerman v. Oregon Dept. of Justice, 170 F.3d

18   1169, 1177-78 (9th Cir. 1999) (Title I incorporates remedies and procedures of Title VII of the

19   Civil Rights Act of 1964, including charge provisions); Stiefel v. Bechtel Corp., 624 F.3d 1240,

20   1244 (9th Cir. 2010) (noting procedures in 42 U.S.C. § 2000e adopted by ADA).  Here, plaintiff

21   did not file his EEO claim until November, 2011, after this action was initiated.  In his EEO

22   complaint, plaintiff concedes he had not filed a charge previously with the EEOC or another

23   agency concerning this matter.  (SAC, Ex. D at 58.)

24   \\\\\

25

26       [8]  Eastern R. Conf. v. Noerr Motors (1961) 365 U.S. 127, 81 S.Ct. 523 ( Noerr ); Mine
     Workers v. Pennington (1965) 381 U.S. 657, 85 S.Ct. 1585 (Pennington).

1    Therefore, this claim is barred for failure to exhaust unless tolling is permitted

2  while plaintiff was pursuing workers' compensation remedies.  As discussed in the previous

3  section, *supra*, a limitations period cannot be tolled during collateral review or other grievance

4  proceeding.  Delaware State College v. Ricks, 449 U.S. 250, 261, 101 S.Ct. 498, 506 (1980).

5  This principle applies to ADA claims.  Soignier v. American Board of Plastic Surgery, 92 F.3d

6  547 (7th Cir.1996) (declining to toll statute of limitations on ADA claim during surgeon's

7  internal appeal); Vaughan v. Pathmark Stores, Inc., 2000 WL 39067, *3-4 (E.D. Pa. 2000)

8  (declining to toll statute of limitations for ADA and other claims while plaintiff pursued workers'

9  compensation claim); Woodruff v. National R.R. Passenger Corp., 403 Fed. Appx. 624, 2010

10  WL 5174838 (2nd Cir. 2010) (citing Ricks to decline tolling during grievance proceeding

11  challenging plaintiff's termination in ADA case); Perrywatson v. United Airlines, Inc., 762

12  F.Supp.2d 1107, 1114 (N.D. Ill. 2011) (no tolling during pendency of arbitration or grievance

13  procedure, citing cases); Burns v. Cook, 458 F.Supp.2d 29, 43-44 (N.D.N.Y. 2006) (in ADA

14  action, limitations period not tolled during grievance procedures).  Therefore, plaintiff's ADA

15  claim should be dismissed as time barred.

16    Moreover, the allegations in the SAC are entirely insufficient to state a hostile

17  environment ADA claim.  Being called a "bobblehead" on several occasions because one is

18  working with pain in his neck does not rise to the level of a hostile environment.  While

19  plaintiff's workplace allegations of derogatory name calling based on ethnicity or nationality,

20  combined with purposeful, potentially serious bumping incidents, may well have stated a Title

21  VII ethnicity, hostile environment workplace claim on its face, see McGinest v. GTE Services

22  Corp, 360 F.3d 1103, 1113-14 (9th Cir. 2004), the seriousness and pervasiveness of the

23  "disability" comments is lacking. There is no connection with the "bobblehead" comments and

24  the tractor bumping incidents, i.e., plaintiff has not alleged that the tractor bumping took place

25  because of plaintiff's perceived disability.

26  \\\\\

1

MOTION TO STRIKE

2        Since all claims should be dismissed, defendant's motion to strike should be

3 denied as moot.

4 CONCLUSION

5        IT IS HEREBY RECOMMENDED that:

6        1.  Defendant Teichert's motion to dismiss, filed February 6, 2012, (dkt. no. 67),

7 be granted and this action dismissed; and

8        2.  Defendant Teichert's motion to strike, filed February 6, 2012, (dkt. no. 68), be

9 denied as moot.

10       These findings and recommendations are submitted to the United States District

11 Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within

12 fourteen (14) days after being served with these findings and recommendations, any party may

13 file written objections with the court and serve a copy on all parties.  Such a document should be

14 captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the

15 objections shall be served and filed within fourteen (14) days after service of the objections.  The

16 parties are advised that failure to file objections within the specified time may waive the right to

17 appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

18 DATED: April 2, 2012

19                                _/s/ Gregory G. Hollows_____
                                 UNITED STATES MAGISTRATE JUDGE
20

GGH:076/Ungureanu316.mtns2.wpd

21

22

23

24

25

26